**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| IN RE:    SHAHIDA SOHAIL, | Case No. 08-30233-KRH |
| | Chapter 7 |
| Debtor. | |
| | |
| MOHINDER SINGH, | |
| Plaintiff, | |
| v. | APN 08-03059-KRH |
| SHAHIDA SOHAIL, | |
| Defendant. | |

**MEMORANDUM OPINION**

This adversary proceeding is before the Court on the Amended Complaint (the "Amended Complaint") filed by Mohinder Singh (the "Plaintiff") to determine the dischargeability of a debt owed to him by debtor Shahida Sohail (the "Debtor") under 11 U.S.C. § 523(a). The Debtor filed her Chapter 7 bankruptcy case on January 21, 2008. Harry Shaia, Jr., is the duly appointed and acting trustee in this case (the "Trustee").

Following a pretrial conference, the Court issued its standard pretrial order in this adversary proceeding on June 11, 2008. The Court originally scheduled the trial of this matter for December 11, 2008. The Debtor never filed an answer or other responsive pleading to the Plaintiff's complaint. The Plaintiff moved for authority to file an Amended Complaint to which motion the Debtor consented. The Debtor was given an additional 20 days from the filing of the Amended Complaint to file an answer (Docket Entry No. 14). The Plaintiff filed the Amended Complaint on July 21, 2008. The Debtor's answer was due on August 11, 2008. However, the

Debtor failed to file an answer or other responsive pleading to the Amended Complaint. The Plaintiff filed a List of Exhibits, a List of Witnesses, and a Motion to Continue Trial on November 26, 2008. At a hearing on December 3, 2008, the Court granted the requested continuance of the trial date and scheduled a second pretrial conference to be held on December 17, 2008.

At the second pretrial conference, the Court rescheduled trial for April 9, 2009. The Plaintiff filed an Amended List of Exhibits on March 25, 2009. Two days before trial, in violation of the time deadline established by the Court's pretrial order and without ever having filed an answer, the Debtor filed a List of Exhibits and a List of Witnesses. On April 8, 2009, in response to the tardy filing by the Debtor, the Plaintiff filed a Motion for Default Judgment, or in the alternative, a Motion in Limine. The Plaintiff argued that the Court should grant default judgment on account of the Debtor's failure to file an answer or other responsive pleading. In the alternative, the Plaintiff argued that the Court should preclude the Debtor from presenting the witnesses or exhibits listed in the Debtor's untimely filed lists on the grounds that the filing violated the Court's pretrial order. Because the answer was due on August 11, 2008, and the Plaintiff waited until April 8, 2009, to ask for default judgment, the Court denied that part of the motion. However the Court did grant the motion in limine. The Debtor's List of Exhibits and List of Witnesses were stricken from the record, and the Debtor was not permitted to introduce that evidence at the trial on April 9, 2009.[1] At the conclusion of the trial, the Court set a briefing schedule for post-trial memoranda and scheduled oral argument for May 20, 2009.

---

[1] The trial began at 10:00 a.m. on April 9, 2009, and during the trial, at 11:08 a.m., the Debtor did finally file an Answer to the Complaint on the Court's CM/ECF docketing system.

2

After considering the evidence that was presented, the memoranda submitted by the parties, and the argument of counsel, the Court announced that it would rule in favor of the Plaintiff at the conclusion of post-trial hearing held on May 20, 2009. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure in support of the Court's Ruling.[2] The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (O), in which final orders or judgments may be entered by a bankruptcy judge. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

## FINDINGS OF FACT

That the Debtor owes $200,000 to the Plaintiff is not contested. The Debtor executed a promissory note dated December 23, 2006, in the principal amount of $200,000 (the "Note"). The Plaintiff is the payee, owner, and holder of the Note. The Debtor along with two others, Abdelhak Lamlilah and Bismillah Shehryar & Malaika LLC, are the makers of and obligors under the Note (the "Obligors"). The Debtor incurred the obligation evidenced by the Note (the "Debt") in connection with the acquisition of a convenience store to be owned and operated by Bismillah Shehryar & Malaika LLC. The convenience store was located at 8701 Staples Mill Road, Richmond, Virginia, and operated under the name Sunoco Gas Station/Convenience Store (the "Convenience Store"). The Debtor was the sole member in and owner of Bismillah Shehryar & Malaika LLC.

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

3

The Note matured on December 31, 2007. The Plaintiff made demand at that time for the repayment of all principal plus accrued and unpaid interest at the rate of 12.5% and other amounts, including attorney's fees, due under the note. The Obligors failed to pay the amounts due and owing on the Note at maturity, or thereafter. When the Plaintiff pursued collection of the Note, the Debtor commenced this bankruptcy case. In her schedules of assets and liabilities, the Debtor listed the Debt that is owed to Plaintiff under the Note. The Debt is not listed as contingent, disputed or unliquidated. The Plaintiff timely and properly filed a proof of claim in the Debtor's bankruptcy case in the amount of $200,000 on June 11, 2008. No objections to the claim were filed. Therefore, the Plaintiff's claim is deemed allowed under § 502 of the Bankruptcy Code.

The Debt is secured by a perfected security interest in favor of the Plaintiff on all of the assets of Bismillah Shehryar & Malaika LLC, including all inventory, furnishings, fixtures, equipment and general intangibles, and proceeds thereof (the "Collateral"), belonging to the Convenience Store. The Debt was also secured by a deed of trust on residential property owned by the Debtor and her husband, Sohail Safeer, in Stafford County, Virginia (the "Stafford Property").

After the Debtor filed the bankruptcy petition, Plaintiff discovered that the Debtor had allegedly made a number of materially false representations and had failed to disclose certain material facts in connection with her efforts to obtain the loan. The Debtor made these false representations and omissions of material fact to Kitty Kaur, the Plaintiff's daughter. Kaur had previously met the Debtor when the Debtor applied for a home loan with Nationwide Funding Corporation, where Kaur worked as a loan officer. Kaur had helped the Debtor and her husband

obtain a conventional mortgage loan to purchase the Stafford Property. Kaur acted as agent for the Plaintiff in arranging the loan evidenced by the Note.

The evidence at trial established that the Debtor made the following material representations in an effort to obtain the loan from the Plaintiff:

a) That she had been the owner of a restaurant in Maryland called Bolino's Pizza (sometimes spelled "Boleno's");
b) That she had sold Bolino's Pizza in order to buy the Convenience Store in Richmond;
c) That she had used the proceeds realized from the sale of Bolino's Pizza to put down approximately $100,000 toward the purchase of the Convenience Store from Empire Petroleum;
d) That she needed a loan of between $150,000 and $250,000 to complete her purchase of the Convenience Store and inventory;
e) That she needed a loan for a short period of time—three to six months—because she had additional money coming to her from Pakistan; and
f) That the money from Pakistan was from the sale of property that she owned there.

The evidence at trial established that, notwithstanding the forgoing representations, the Debtor never owned or had any ownership interest in Bolino's Pizza. There were no proceeds or profits from any sale of Bolino's Pizza. The monies paid to Empire Petroleum were derived from advances on Abdelhak Lamlilah's credit cards. The Debtor did not own any property in Pakistan, and, accordingly, she did not actually expect to receive any funds from Pakistan. As the Debtor had no additional money coming to her, the Debtor knew at the time she signed the Note that she would be unable to repay the loan in three to six months or even at maturity. Finally, the Debtor failed to disclose that she would be abandoning the Stafford Property, which was pledged as additional collateral for the Note, and moving into a house in which she had no ownership interest in Richmond. The Court finds that the material representations made by the Debtor were false ( the "Misrepresentations").

These Misrepresentations were made first during oral conversations between the Debtor and Kaur. They were later commemorated in a written loan application signed by the Debtor. The Debtor made the very same Misrepresentations to the Virginia Alcoholic Beverage Commission in an effort to obtain a license for the Convenience Store to sell alcoholic beverages. The Virginia Alcoholic Beverage Commission thereafter granted the license.

Kaur relied on the Misrepresentations and omissions of material fact in evaluating the Debtor's request for a loan. The evidence established that Kaur would not have recommended that the Plaintiff make the loan otherwise. Kaur found it very persuasive that the Debtor had prior experience owning a profitable business. It was important to Kaur that the Debtor was willing to risk a significant amount of her own money—an amount equal to 50% of what the Debtor sought to borrow—from her personal funds realized from the sale of her successful business. It was also important that the loan was needed for a relatively short period of time. An appraisal of the Convenience Store and property located within the store bolstered Kaur's belief in the Debtor's ability to profitably run the Convenience Store and with the money coming from Pakistan to be able to repay the loan.

The initial meeting of creditors in the Debtor's bankruptcy case pursuant to § 341 of the Bankruptcy Code was held on February 19, 2008. The meeting was adjourned to March 31, 2008, because the Debtor failed to produce documents and information required by the Trustee.[3] During the meeting held on March 31, 2008, the Debtor testified that she had closed the Convenience Store the prior evening and would not be reopening it. The Convenience Store was

---

[3] On March 31, 2008, the meeting was again adjourned to April 21, 2008, because the Debtor failed to provide the requested documents and information. For the third time in a row, and despite having received specific instructions from the Trustee regarding the documentation and information that was required to be produced, the Debtor came to the meeting on April 21, 2008, without bringing the documents and information that had been requested.

6

fully stocked as of that date. The Trustee instructed the Debtor not to reopen the Convenience Store or to dispose of any of its assets. The Debtor was permitted to remove her own personal property from the Convenience Store. She was also instructed to dispose of any perishable items that might have an unpleasant odor if left to spoil. She was instructed to turn the keys over to the Trustee. The Debtor totally disregarded the Trustee's directions. Instead she removed from the premises all of the beer. Almost all of the soft drinks were emptied from the coolers as well. Nearly all of the tobacco products were removed, and the shelves were emptied of groceries and other inventory. The security system was dismantled and removed. The computers, printers, and fax machines were missing. The deli counter and related items were gone. The automatic teller machine was missing. There was evidence that the Debtor had allowed people to pump gas at the Convenience Store after the Trustee instructed her to cease operations. All of the items that had been removed from the Convenience Store were Collateral for the Debt owed to the Plaintiff.

The Manager of the Convenience Store testified that the cost to replace the items of Collateral that were wrongfully removed from the Convenience Store was approximately $40,000, not including missing gasoline.[4] The appraisal that had been prepared when the Debtor obtained the loan evidenced by the Note corroborated the testimony as to ownership and value of the removed items. Although the Debtor argued to the contrary, there was no evidence presented at the trial that any of the items that had been removed were leased to the Convenience Store or did not otherwise belong to the Convenience Store.

---

[4] This was itemized as follows: ATM Machine: $2,500; Deli Counter: $3,000–4,000; Printers: $100; Two Computers: $1,000; Fax Machine: $200; Security Cameras: $2,500–3,000; Cigarettes/Tobacco Products: $10,000; Beer and Soda: $10,000; Groceries: $7,000–8,000.

7

## **DISCUSSION**

The Amended Complaint seeks a determination that the Debt owed to the Plaintiff is nondischargeable under various subsections of § 523(a) of the Bankruptcy Code. Count One alleges nondischargeability under § 523(a)(6) for the damages that the Debtor caused by willfully and maliciously injuring the Plaintiff's property when she converted the Collateral that secured the loan evidenced by the Note. Count Two seeks to have the entire Debt determined to be nondischargeabe under § 523(a)(2)(A), alleging that the Debtor obtained money by false pretenses, a false representation or actual fraud, and also under § 523(a)(2)(B), alleging that the Debtor used a false statement in writing to obtain money. Count Three alleges nondischargeability under § 523(a)(4) on the grounds that the Debtor committed larceny when she converted Plaintiff's Collateral. Because Counts One and Three are factually interdependent, the Court will address Count Two first, and then Counts One and Three.

Debts are presumed to be dischargeable in bankruptcy, and so the Plaintiff bears the burden of proving by a preponderance of evidence that a debt should not be discharged under § 523(a). *See Grogan v. Garner*, 498 U.S. 279, 291 (1991). Although the essential purpose of bankruptcy is to provide debtors a fresh start, the Court must be "equally concerned with ensuring that the perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code." *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999); *see also Pleasants v. Kendrick* (*In re Pleasants*), 219 F. 3d 372, 375 (4th Cir. 2002).

### *Count Two: 11 U.S.C. § 523(a)(2)*

Section 523(a)(2) of the Bankruptcy Code addresses two different categories of debts that are not dischargeable in bankruptcy. The Supreme Court of the United States referred to §§ 523(a)(2)(A) and 523(a)(2)(B) as "two close statutory companions barring discharge:"

8

> One applies expressly when the debt follows a transfer of value or extension of credit induced by a falsity or fraud (not going to financial condition), the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition on which the creditor reasonably relied.

*Field v. Mans*, 516 U.S. 59, 66 (1995).

First, under subsection (A) of § 523(a)(2), a debtor is not entitled to a discharge from a debt to the extent that it was obtained by false pretenses, a false representation, or actual fraud. *See* 11 U.S.C. § 523(a)(2)(A). The Plaintiff "must prove four elements to prevail: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the [P]laintiff; and (4) the [P]laintiff's justifiable reliance on the misrepresentation." *In re Biondo*, 180 F.3d 126, 134 (4th Cir. 1999).

Importantly, for the fourth element of a cause of action under subsection (A), the Plaintiff only has to satisfy the "minimal standard" of *justifiable* reliance, not the heightened *reasonable* reliance standard. *Id.* at 135 (quoting *Field v. Mans*, 516 U.S. 59, 70 (1995)); *contra* 11 U.S.C. § 523(a)(2)(B). In *Biondo*, the Fourth Circuit applied the justifiable reliance standard announced by the Supreme Court of the United States in *Field v. Mans*, 516 U.S. 59 (1995), which cited with approval an Illustration in the Restatement (Second ) of Torts § 540 (1976). In the Illustration, a buyer's reliance on a seller's representation that it owned land free and clear of liens was deemed justifiable, even if the buyer could have walked across the street to the courthouse and determined the status of encumbrances on the property. Thus, the Fourth Circuit stated that:

> using this minimal standard of justifiable reliance, it is clear that [plaintiff] was not required to inspect the Partnership's financial statements and was instead justified in relying upon the [debtors'] representations that they owned the interests in the Partnerships and could assign them.

9

*Biondo*, 180 F.3d at 135; *see also In re McKews*, 270 B.R. 593, 621–22 (Bankr. E.D. Va. 2001) ("Plaintiffs are not required to continually look over an entity's shoulder.").

Likewise, the Plaintiff and his agent Kaur were justified in relying upon the Debtor's misstatements, and they were not required to conduct further investigation or examine financial statements. The evidence shows that the Debtor made material misrepresentations and concealed material facts in obtaining the loan. She intended for the Plaintiff to rely on those misrepresentations by giving her the loan; the Plaintiff actually relied on the misrepresentations and was thereby harmed; and the Plaintiff was justified in relying on the misstatements. All of the elements of § 523(a)(2)(A) are satisfied.

Second, under subsection (B) of § 523(a)(2), a debtor is not entitled to a discharge for a debt to the extent that it was obtained by use of a materially false written statement respecting the debtor's financial condition on which the plaintiff reasonably relied, and that the debtor caused to be made or published with intent to deceive. 11 U.S.C. § 523(a)(2)(B).

The Debtor's written loan application included certain materially false representations regarding the Debtor and Abdelhak Lamlilah. That the Debtor submitted the written misrepresentations with intent to deceive can be implied from the circumstances of this matter. *In re Ross,* 180 B.R. 121, 129–30 (Bankr. E.D. Va. 1994) (noting that although constructive or implied fraud is not enough under § 523(a)(2)(B), actual fraud may nonetheless be shown by persuasive circumstantial evidence). The only plausible explanation under the circumstances is that the Debtor wanted the loan from the Plaintiff, and so she lied in order to get it.

The final issue under § 523(a)(2)(B) is whether the Plaintiff's reliance on the Debtor's misrepresentations was objectively reasonable—rather than simply justifiable as required by subsection (A). *See, e.g.*, *In re O'Connor*, 149 B.R. 803, 809 (Bankr. E.D. Va. 1993). Even

partial reliance is enough, and the Plaintiff may objectively rely on things other than the Debtor's misrepresentations and omissions of fact in deciding to extend credit. *First Commercial Bank c. Robinson* (*In re Robinson*), 192 B.R. 569, 576–77 (Bankr. N.D. Ala. 1996).

Under the circumstances presented here, the Court concludes that the Plaintiff's reliance on the Debtor's misrepresentations was reasonable. Kaur had previously helped the Debtor obtain a conventional loan to purchase a home, which was approved and granted by an institutional lender. The Debtor had convinced other entities, including Empire Petroleum and the Virginia Alcoholic Beverage Commission, to allow her to conduct business on credit terms and with the appropriate licenses.

Accordingly, the Court concludes that the entire $200,000 Debt is not dischargeable under 11 U.S.C. §§ 523 (a)(2)(A) and 523 (a)(2)(B).

### *Count One: 11 U.S.C. § 523(a)(6)*

Section 523(a)(6) of the Bankruptcy Code provides that a debtor is not entitled to receive a discharge for any debt "for willful and malicious injury . . . to another entity or to the property of another entity." An injury is willful when the court can determine that the debtor intended the act and by his or her conduct intended to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The "word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.*

Since the *Geiger* decision, courts have struggled to determine whether a debtor must have specifically intended the injury or whether the commission of an intentional tort that is "substantially certain to result in injury" is sufficient to satisfy the willfulness requirement. *Johnson v. Davis* (*In re Davis*), 262 B.R. 663, 670 (Bankr. E.D. Va. 2001). This Court has

11

previously adopted the "objective substantial certainty" or "subjective motive" test to satisfy the willfulness requirement. *In re Trammell,* 388 B.R. 182, 187 (Bankr. E.D. Va. 2008) (citing *Parsons v. Parks* (*In re Parks*), No. 03-1072, 2003 WL 22989684, at *1 (4th Cir. Dec. 19, 2003) ("[t]he test, then, is whether the debtor acted with 'substantial certainty [that] harm [would result] or a subjective motive to cause harm.'")). The Court will apply that test once again in this case.

The Court is mindful that it is not appropriate to equate a breach of contract, such as the breach of a security agreement, with conduct causing willful and malicious injury. But here, there is no doubt that the Debtor not only knew of the existence of the security interest but also knew that removal of the Collateral from the Convenience Store was wrongful. The Trustee had specifically instructed the Debtor not to do so. Furthermore, the Debtor was fully aware that the removal of the Collateral was certain to cause financial harm to the Plaintiff. The knowing conversion of another's property done intentionally and without justification is a willful and malicious injury to property. *St. Paul Fire & Marine Ins. Co. v. Vaughan* (*In re Vaughan*), 779 F.2d 1003, 1009–1010 (4th Cir. 1985) (conversion of a surety's interests sufficient to establish a nondischargeability claim under § 523(a)(6)); *see also Weigend v. Chwat* (*In re Chwat*), 203 B.R. 242 (Bankr. E.D. Va. 1996) (failure to return another's property).

The Court concludes that the Debtor's actions amount to a knowing conversion of the Plaintiff's property that caused willful and malicious injury under § 523(a)(6) of the Bankruptcy Code. The damages incurred as a result of the Debtor's conversion of the Collateral are therefore nondischargeable. Based upon the evidence as to the valuation of Plaintiff's Collateral, the Court determines that $40,000 of the Debt is nondischargeable under 11 U.S.C. § 523 (a)(6).

*Count Three:  11 U.S.C. § 523(a)(4)*

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt resulting from embezzlement or larceny.  11 U.S.C. § 523(a)(4).  Bankruptcy courts are not bound by the state law definition of larceny but may follow federal common law.  *Johnson v. Davis* (*In re Davis*), 262 B.R. 663, 672 (Bankr. E.D. Va. 2001).  Under federal common law, larceny is the felonious taking of another's personal property with the intent to convert it or deprive the owner of the same.  *McCall v. Poos* (*In re Poos*), 43 B.R. 180, 181 (Bankr. S.D. Ill. 1984).  The Debtor's intent to deprive the Plaintiff of his interest in the collateral was clear and wrongful.  The Debtor's actions with respect to the Collateral amount to conversion, which is deemed to be larceny under § 523(a)(4).  *Id.* (conversion of collateral and proceeds)*; see also Champion Home Builders Co. v. Tarrant* (*In re Tarrant*), 84 B.R. 831, 833 (Bankr. M.D. Fla. 1988) (failure to turn over proceeds from sale of plaintiff's collateral deemed embezzlement therefore nondischargeable under § 523(a)(4)).  Based upon the evidence as to the valuation of Plaintiff's Collateral, the Court determines that $40,000 of the Debt is nondischargeable under 11 U.S.C. §§ 523 (a)(4).

## CONCLUSION

For the reasons stated above, the Court concludes that the entire $200,000 Debt is nondischargeable under Count Two of Plaintiff's Amended Complaint, pursuant to §§ 523 (a)(2)(A) and 523 (a)(2)(B) of the Bankruptcy Code.  The Court further concludes that $40,000 of the $200,000 Debt is also nondischargeable under Count One of Plaintiff's Amended Complaint, pursuant to 11 U.S.C. § 523 (a)(6), and under Count Three of the Amended Complaint, pursuant to 11 U.S.C. § 523 (a)(4).  Therefore, the Court will enter judgment in favor of the Plaintiff against the Debtor in the total amount of $ 200,000.

A separate order shall issue.


ENTERED: _____


    /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE




Copies to:

Mohinder Singh
10 Glacier Way
Stafford, VA  22554

Philip C. Baxa
MercerTrigiani
16 South Second Street
Richmond, VA  23219

Shahida Sohail
3125 Welsh Circle
Richmond, VA  23223

Spencer D. Ault
Law Office of Spencer D. Ault
13193 Mountain Road
Lovettsville, VA  20180